Weeks v. United States Weeks v. United States Mr. Hawker. Yes, sir. Good morning, Your Honors. Tom Hawker on behalf of Mr. Weeks and his family. May it please the Court, Counsel. Mr. Weeks is asking the Court to rule that the historical record within the meaning of U.S. v. Beeman includes the record through direct appeal. That is to include also this Court's opinion and reasons for why he was found to be finally and legally, after direct appeal, an armed career criminal. This Court, on direct appeal, found that Mr. Weeks was an armed career criminal. It chose the third predicate that's required for that to happen as a resisting arrest offense he had in Massachusetts and specifically found that the risk embodied in resisting arrest was the same as the residual clause, which has since been declared unconstitutional in Johnson 2. So Mr. Weeks has established from the actual record, the full historical record, what exactly happened here, which was his sentence actually and was adversely, within the language of Beeman, affected by the residual clause because without the residual clause, the Court couldn't have upheld it based on the resisting arrest because there were no Shepard documents introduced to place it in the elements. So with respect to resisting arrest, Mr. Weeks worked with what he had, which was what actually happened and said, I've met my burden. You found me an armed career criminal because of the residual clause. However, if more is required and if now the focus is the assault and battery conviction that he had in his history, he also meets his burden under Beeman as well as a substitute conviction to plug in because resisting is and was based on the historical out. He meets that burden because assault and battery in Massachusetts could only have served as a predicate if it was thrown into the residual clause bucket. And if you look at the entire historical record here, which in this case does include through direct appeal, it's evident that that's the case. First, yes sir. I'm not sure about that. I don't know the answer to any certainty, but I tried to do a lot of digging because the district court said something about the First Circuit cases or the First Circuit law without going any further, right? That's absolutely right. It was at least an allusion to the First Circuit jurisprudence. It said I'm following First Circuit law. He followed that case up there. He followed First Circuit law. It's unclear what he was referring to specifically. It was unclear what he was referring to, but- So here's the case that I found. The others support your view, I think, but there's one that sort of cuts against it if I've looked at First Circuit law correctly. I'm not sure the party cited it. It's called United States versus Bregnard, 951, Fed 2nd, 457, and the discussion is at First Circuit in 1991. Now I haven't gone back to see whether the Massachusetts assault and battery statute was different back then or not. So again, I'm not sure about this, but I'm going to ask your colleague about it too and see what you think about it. That case upholds the use of an assault and battery conviction in Massachusetts as a predicate offense under ACCA and using what are now known as shepherd-type documents, the PSI, et cetera, appears to do it under the elements clause. So I throw that out there for whatever it's worth. I don't know whether it has relevance or not, but the other cases, I think, support your view about where First Circuit law was going. There's even, there's actually a 1998 First Circuit case which says that assault and battery on a correctional officer cannot qualify as a violent felony at all under the ACCA, which is crazy if the other case held what I think it held. That second case is United States versus Fortis, F-O-R-T-E-S, 141 F 3rd 1 at page 5, and that's from the First Circuit in 1998. So you've got a 1991 case which seems to suggest maybe looking at a lot of documents which we now call shepherd documents, it might qualify under the elements clause, although the language and the opinion is a little bit ambiguous and vague. And of course, it predates the succession of Supreme Court cases refining the ACCA standard. So it's got that problem too. But then you've got this 1998 case that, as an aside, just says this assault conviction could not have been counted under the ACCA predicate, so we're going to look for something else. So, it's sort of a mess. I can comment on that. The state of the law at the time of the sentencing for such thrash was under the First Circuit that did assault and beat the charging language that was at issue here was sufficient to meet the elements clause. I think that's clear from the record. What happened after the sentencing hearing was that U.S. v. Holloway was decided. U.S. v. Holloway said, well, and it was based on Curtis Johnson that came through this court and said, you've got to look to state law to define what the elements are and whether it meets the violent felony definition. Holloway was the First Circuit case that overruled the very decisions relied on by the district court. And what Holloway said, and that's the case we rely on, it says, Judge, that did assault and beat is statutorily prescribed charging language. It's in a statute, Massachusetts General Statutes, A, did assault and beat B. It covers multiple offenses, an offensive touching, a reckless, all of the different versions of assault and battery in Massachusetts, some of which don't meet the violent felony definition. Holloway decided, while Mr. Weeks' appeal was pending, says, you can't just use did assault and beat, because on its face, if you look to the state law, it covers things that aren't violent felonies. You have to go to Shepard documents. And in this case, we don't have those. As a result, the elements clause based on the— The only Shepard document you had was the charging document, which Holloway eliminated as indicating that was an elements clause case. That's correct, Judge. That's absolutely correct. So, by the time we reached direct appeal, Your Honors, the First Circuit has said the case law relied upon by the district court without additional analysis—you just said I rely on First Circuit law—had been reversed, and you couldn't count it under the elements clause. The Seventh Circuit had also held—so, there are two circuits by the time the case reaches this court on direct appeal. The Seventh Circuit, 10 years previously, said did assault and beat can't count, because it's not describing the offense. It's boilerplate from Massachusetts statute, and encompasses more than a violent felony. And had the defendant, Weeks, preserved that argument about being boilerplate in the district court and on appeal? Yes, both. We cited the Seventh Circuit case. We argued in our objections to the PSR at paragraph— Isn't the brief the first time on this case? Yes. We've argued that through every brief, I believe, in this case from 2007 forward. We've had this for quite some time in our office. But the First and the Seventh said did assault and beat, not enough. You can't say it's a violent felony. Curtis Johnson was the basis for the change in law in the First Circuit, where Curtis Johnson said you have to look to state law to see what the offense is. What does this charging language mean? All that was presented to this court on direct appeal, and on direct appeal the court said we don't have to decide that issue. We're going to choose resisting in the residual clause. But my point is this. To meet my burden under Beamon to show he was sentenced under the residual clause, first we've shown that the actual basis from the full historical record was residual clause based on resisting. And the second way that we can meet that burden, we've also met by, in the words of Beamon, pointing to precedent from the full historical record that holds or makes obvious that it could only have been counted as a predicate under the residual clause. And that's why we meet it with respect to assault and battery. Because the law, at the time this sentence was finalized on direct appeal, could only have allowed the assault and battery under Massachusetts, Holloway, Curtis Johnson, the case from the Seventh Circuit, if you throw it in the residual clause bucket. So either way you slice it, based upon the full historical record, Mr. Weeks has met his burden to show that his sentence rests on exclusively the residual clause. Beamon, I know the Governor's pointed this out, maybe I'll hit it in rebuttal, but Beamon doesn't restrict the court to just the sentencing record. And that's the argument that's been made. Beamon didn't purport to control every case and every posture and every factual circumstance that was before it. I think it's very important for the court to understand, it probably does, that Beamon did not involve a direct appeal of the sentence. So in that case, by definition, the historical record ended at sentencing in 2009. All the court had to look to was what was said at sentencing in the transcript. And so when Judge Martin wrote footnote four, I'm sorry, Judge Carnes wrote footnote four, she said you can look to the sentencing transcript, the PSR, what did the judge say? But she also said each case must be decided on its own facts. And that the non-exclusive ways to prove you were sentenced under the residual clause when you only have the sentencing record are just a few examples. A movement, there are other circumstances on which a movement can rely. That certainly would include the law in place on direct appeal, which the Supreme Court says that the Court of Appeals apply the law in effect at the time of appeal. We're also not hemmed in and handcuffed to the law frozen at sentencing. That same thing is true with respect to the Pickett case, which comes right after Beamon and it did not have an appeal at all. So again, the sentencing court was the last stage that could have had any effect on the sentence. That's correct. If I could, my time is up. Could I make one comment based upon that? Yes. Okay. I have looked at 24 odd cases that appear on Westlaw since Beamon to see if they involve the direct appeal record and I can't find any of them that involve this situation where Mr. Weeks is faced with. So this is kind of an unusual case and I'm not sure that the court will run across it again. So finding that the direct appeal is in the historical record, I think is just and accurate and it's not going to come along that often. Thank you, Judge. Mr. Mandel. May it please the Court. My name is Gabriel Mandel and I represent the United States. The district court's dismissal of defendant's successive 2255 motion should be affirmed because this defendant cannot meet his burden of proving as a matter of historical fact that his sentence was imposed solely on the residual clause. Now, Beamon lays out the roadmap for how this case should be evaluated and what the defendant has asked the court to do today is change that roadmap and that's not something that this panel can do. Why can't we? Because Beamon is bonding precedent as a part of that. That did not involve an appeal of the sentence so that the sentence was fixed as of the sentence there. Contrary, here, the sentence was appealed and could have been changed and arguably should have been changed. So, Your Honor, you correctly recite the difference between the cases. There's two reasons why that difference doesn't matter. First of all, Beamon contemplates the possibility in changes in the law after the sentencing. If you look at footnote five, what the decision says is the only point that matters is what happened at the sentence of hearing. The case law at the time. Dicta. Dicta. Because that's the only thing that was relevant in that case. I don't think it's dicta, Your Honor, because every panel that's applied Beamon since has quoted that footnote and quoted that holding. And as Judge Martin said in her dissent to the en banc review, what Beamon means is that a petitioner has to prove that there was binding precedent at the time of sentencing. So one issue that this defendant has is the timing. It's the temporal issue. This Holloway case comes too late for him. Well, if you want to talk about binding precedent, what about the First Circuit authority that says that an assault and battery conviction, even on a correctional officer, can't qualify as an ACCA predicate? Respectfully, Your Honor, the parties are in agreement that at the time of sentencing, U.S. v. Rivera, the First Circuit case that said that assault and beat charging language is sufficient, was good law, and it controlled the district court's decision. We're not required to accept the party's stipulation or concession. And my question to you is, if the district judge said, I'm relying on First Circuit law, what are we to make of the fact that some First Circuit cases indicated that an assault and battery conviction didn't qualify at all under ACCA? Your Honor, if the district court sentenced under the elements clause, but it did so incorrectly, that's a Descamps claim. No, no, no. It's not a Johnson claim at all. I understand, and you're exactly right about that, but that's not my question to you. I'm sorry, Your Honor. The district judge said, I'm relying on the First Circuit cases or First Circuit law, right? Didn't explain what that meant. And so I'm asking you, in the abstract, if there are First Circuit cases, right? The one that I'm thinking of is Fortas from 1998, which says that an assault and battery conviction on a correctional officer doesn't count under ACCA. Why isn't that part of the mosaic of First Circuit law against which we can read the district court's comments? First of all, Your Honor, that's not the conviction that Mr. Weeks was convicted of. That's going to be a different statute that the First Circuit's interpreting there. How can assault and battery in a correctional officer be less problematic than a regular assault and battery? Well, Your Honor, it's not a question of problematic. It's a question of what are the elements of the offense. I don't think either. Don't you think that the only other element of assault and battery in a correctional officer is that you assaulted and battered a correctional officer as opposed to a regular person? So, Your Honor, the U.S. v. Rivera case that the district court was, that we presented argument on, was from 2009. And it cites four other cases going back to U.S. v. Mango in 1998 as being the initial case that said the assault and beat language is enough. Now, whether that case directly overturned the case that you've cited, I don't know the answer to that. But what we know is that there was a series of cases that both parties briefed, and we agreed on what it meant. Because what the defendant argued at sentencing was, Your Honor, First Circuit case law is not binding on you. That's just persuasive authority. Please ignore it and come out our way anyway. And that's the second problem with defendant's argument. Even if we expand the historical record to include what happened on direct appeal, Holloway isn't enough for him to meet his burden. Because all Holloway says is, in the First Circuit, that language is no longer enough. This court, either on direct appeal or on remand to the district court, would have had to answer in the first instance for the Eleventh Circuit as to whether Massachusetts— It seems to me that Holloway certainly makes it more likely than not that any judge looking at that situation after Holloway would have—it is at least more likely than not that they would have relied on the residual clause and not the elements clause. Respectfully, Your Honor, what Beeman says is that the defendant has to prove more likely than not a historical fact, not a likely hypothetical or a likely counterfactual. But Beeman doesn't only say that. It says that the precedent at the time, which if we can consider the direct appeal, the precedent at the time included Holloway, makes it obvious that the enhancement relied on the residual clause. So it's not just a historical fact. It is precedent, precedent that makes it obvious. At the time of sentencing, yes, Your Honor. Our point is that First Circuit case law can't do that. It has to be Eleventh Circuit case law that tells you, and this is what Judge Martin understood in her dissent. That's why she was so upset, because she would have to point to Beeman. Let's get back to, I think, the crucial issue in this case is whether or not we can consider the direct appeal, because if we can, you can just assume for the sake of this question you're going to lose if we can consider the direct appeal. It seems to me that it makes no, number one, it makes no sense, no, no, number one is that it does not involve the appeal. It doesn't matter what it said. It could not have held that. Second, it would make no sense to limit to the sentencing time, because everybody knows under Supreme Court law, the sentence can change on appeal. And furthermore, it seems to me that Beeman also supports that position, because what it says in its real logic is that we have to determine whether the basis of the enhancement was the residual clause. And that is obvious in this case, that the basis for the enhancement had to be, as a matter of law, that it's at least more likely than not that Holloway means that it had to rely on the residual clause. What's wrong with that thinking? So first of all, Your Honor, I do think Beeman controls, I think footnote 5 makes it clear. Mr. Beeman had a direct appeal. His direct appeal wasn't decided until July 2010. Now he didn't raise sentencing issues, but if there had been an intervening change in the case law during that time period, he could have raised it, asked for supplemental briefing, filed a 20HA letter. But what footnote 5 says is only 2009 matters. And the Beeman panel had the record. They knew when his direct appeal was. If they wanted to extend that time period, those judges are fully capable of doing so. That's not an unusual time frame. They made a very specific decision about what time frame mattered. Okay. Let me flip the question a little bit and see if I can force you into Judge Anderson's corner.  Thank you. Okay? It's not going to be helpful. I understand. Let's say that in Mr. Weeks' direct appeal, the panel did something slightly different. Let's say the government defended the ACCA sentence based on the assault and battery convictions based both on the elements clause and the residual clause. And let's say the panel, again, this is a hypothetical, the panel says, we hold as a district court could not have used the elements clause for these predicate convictions, whether it's for Holloway or for some other reason. So elements out of the way. But we affirm the ACCA sentence because we hold that the district court could have sentenced him to an enhanced ACCA sentence under the residual clause. Is the case any different for you? Yes, Your Honor. I think it's much closer. Because you consider the appeal? I still think you don't. Why is it closer then? It's closer because that defendant is still dealing with historical facts. No, no. No, no. But before you get to what the panel did, you're now looking at what the panel said. So if what the panel did in my hypothetical matters, then you have to address Judge Anderson's question about why the panel's decision doesn't matter at all. Because if the panel decision doesn't matter at all, then my hypothetical is an easy one for you too. And that is that that defendant loses as well. Yes, Your Honor. And I do think that your hypothetical is easy and they do lose. I was trying to answer in the event. So you don't look at that. In that hypothetical, you also say it doesn't matter what the Eleventh Circuit told us. Counsel, I'm a little disturbed with that. Okay. Weeks, on direct appeal, challenged the reasonableness of the sentence. So under the sentencing law, the panel was the last sentencer, by and large. Last sentencer in terms of either accepting or rejecting Weeks' arguments and the government's. And in his brief to the panel, he laid out the argument that was under the residual clause. And our panel on appeal didn't apply to the armed criminal and the ACCA. So it applied it, but it was relying on a First Circuit case that was a guideline case. So what the panel did, in my view, was it entertained what the lawyers said in both briefs and then affirmed the sentence. That's the historical fact. What the direct appeal panel did, Your Honor, is it didn't reach the assault and battery conviction at all. And of course, that was routine. That was the fourth conviction. Even post-Johnson, you don't reach the question. The resisting arrest was it. Right. And so you can't infer anything from that. If it was enough for a defendant under Beeman simply to show that the direct appeal panel only relied on the residual clause, well, that opens the floodgates. Because that was routine. If you had two drug offenses and a residual clause offense, of course they're not going to reach the enumerated or elements clause offense. With respect to the panel, you still do that today. If there's two drug offenses and a murder, you don't tell us whether the Georgia aggravated assault is an elements clause or not. So it's— That is a little bit better argument than your argument that you can't look at the direct appeal. I should have led with that then, Your Honor. And I do want on rebuttal for the other side to address it. And the argument is that even though the decision with—it's pretty clear that the sentencing court with respect to the assault and battery relied on the elements clause. I believe that's been conceded. Yes, Your Honor. So the fact that that happened, even though it's dead wrong and even though the appellate court pretty clearly would have changed that and relied only on the residual clause, that didn't happen in fact. Right. So your position has to be that even though in fact the enhancement clause could not have—the enhancement could not have been based on the elements clause if they'd been following the law. The sentencing court made a mistake. The appellate court didn't correct it. And therefore, defendant loses. That has to be your argument. Just to clarify a few things. The district court got it right because the district court—the First Circuit case law, to the extent that it was controlling, it wasn't. But he followed that decision. Let me tell you the best argument against your position, I think, if that were your position that I laid out. And that is that you look—under Beeman, you look at the law at the relevant time. And I'm assuming the relevant time is the direct appeal according to Supreme Court law. At the relevant time, the direct appeal panel did not address it at all because they made the mistake based on the residual clause with respect to resisting arrest. So the resisting arrest residual clause is the portal that you get to look at it. And then you say the direct appeal were wrong there. Therefore, if they were applying the law as it now is, which we do with Samuel Johnson, they would obviously have reached the assault and battery because they had to get the third one. And when they got there, they would obviously have—the precedent makes it obvious that they would have relied on the residual clause, not on the elements clause. May I answer, Your Honor? My time is out. May I answer the question? Yes, go ahead. It takes me too long to talk, so you should get the answer. Your Honor, respectfully, that lengthy recitation that you've just given us is exactly the type of counterfactual hypothetical that I believe every defendant moving on a successive 2255 motion would love to do. But Beeman says that's not the kind of analysis that we're going to do. And that's not new to Beeman. That's EDPA. That's 2255. This is narrowly, strictly limited. And he has to show what did happen. And we know what did happen. And as soon as he crosses the line into what could have happened, what would have happened, or even what should have happened, he has exited the area of key historical fact, which he has the burden of proving. Don't we know what happened on a direct appeal? We know that the panel didn't reach the question, which is not unusual in these cases, Your Honor. But we also know what the panel did reach the question because it affirmed the sentence. Yes, Your Honor. So we have to look at the briefs and then the panel's opinion, in my view, to see what the panel decided in affirming the sentence. May I answer the question, Your Honor? Yeah. The way they affirmed it is also clear. They affirmed it on the basis of the resisting arrest. Our point is that, and I think this goes back to Judge Anderson, maybe your question, why do we look at the sentencing court only? Because that's where everyone has a PSR, everyone has a transcript, there's a set point in time. As soon as you look at direct appeal panels with respect to the work that you all do, it's not going to be clear what happened. Because you can affirm for any reason in the record. You don't have to reach questions that aren't necessary. So the record is going to be replete with opinions saying we're affirming on the basis of the residual clause. That doesn't tell you anything about how they were actually sentenced in the first place. I thank the panel for its time. I think I understand your point. Judge Anderson, I will address that question. I think you wanted me to address. I want you to address also the argument he just made at the very end that we shouldn't look at the direct appeal because it's not as clear-cut. The government is the one presenting the hypothetical here. We're pointing to what actually happened, which Judge Choklat, I think you pointed out, and Judge Anderson, you did. The record says resisting arrest, you were sentenced based upon it. It affected adversely your final legal sentence through direct appeal, which is black-letter law. What happens through direct appeal is part of the historical record in Mr. Weeks' case because he did appeal directly on the very issues that the court decided. So if anyone's throwing a hypothetical out in the room as to what might have happened, it's the government. We first point, I'll remind the court, to what actually happened, which is Mr. Weeks is an armed career criminal, the portal, Judge Anderson. Because of the residual clause, we've established under Beeman that he was sentenced and his sentence turned. The legal basis offered to make it final was the residual clause. That satisfies the burden under Beeman. Now, we're forced to address the assault and battery because of the hypothetical that the government is trying to plug in and say, oh, okay, well, that's what happened. And that's all Mr. Weeks can do is point to what happened. That's what he has to work with. But now we're going to substitute assault and battery because that was elements clause and he loses on that basis. First, that's not the basis for his final legal decision, which under black-letter law counts. What this court does on direct appeal counts. Secondly, assault and battery at the time of direct appeal, when the full historical record is considered, the actual historical record, factual and the legal precedent, as Judge Schoflat pointed out, which is part of that record, made it obvious under the standard of Beeman that that predicate, assault and battery, could not have been used at the relevant time, at the time of direct appeal, because the First Circuit said no. Curtis Johnson, Supreme Court binding precedent, said you can't just rely on did assault and beat in essence. That's why Holloway made its decision. And the Seventh Circuit said did assault and beat is simply not enough to establish a violent felony. So you have two circuits. And that plus no Shepard documents on the basis of which the sentencing court or the appellate court could have found it was on the elements clause. Correct. And Curtis Johnson was decided a week after Mr. Weeks' sentencing. It was decided literally a week after Mr. Weeks' sentencing, and it was cited to the court on direct appeal. And it was the basis for the Holloway decision saying did assault and beat, it's not a federal question. It doesn't describe what Mr. Weeks did. It describes an offensive unconsented to touching, a reckless battery, as well as the harmful kind. We can't base an armed career criminal 15 to life based upon that boilerplate charging language. The relevant time here is direct appeal. The court in Beeman was not handcuffing the Eleventh Circuit to never consider the appellate record and the very bases offered on direct appeal for an armed career criminal enhancement. That's what doesn't make any sense. And it won't open the floodgates because if you look at, and I did the Westlaw search, there are about 24 cases that I could come up with citing Beeman. Not a single one of them has this posture where the direct appeal matters. Did you look elsewhere in other circuits? Has this come up there? I have not in terms of running Beeman, no, Your Honor. Footnote 5 doesn't cut off the court. I can guarantee you they're all over the lot. Okay. Nevertheless, the First Circuit is clear and the Supreme Court is clear, Mr. Weeks. I think we have your point. Thank you, Judge. Thank you, gentlemen. We'll move to the third case.